IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK HEMSTREET and GREGG CLAPPER,

                Plaintiffs,         CV-07-732-ST

      v.                           OPINION AND ORDER

BRADLEY DUNCAN, RANDALL SCORBY,
DAREN CHANDLER and JOHN DOES 1-6,

                Defendants.

STEWART, Magistrate Judge:

Defendants Bradley Duncan, Randy Scorby, and Daren Chandler ("State defendants") and Oregon State Police Inspector Jeff Hershman[1] move the Court for an Order quashing the subpoena *duces tecum* directed to Inspector Hershman by plaintiffs dated October 4, 2007. The

---

[1] Inspector Hershman is not a party to this litigation. However, he is represented by the same attorneys as the State defendants who have argued his position to the Court.

1 - OPINION AND ORDER

State defendants rely on FRCP 45(c)(3)(A)(iii) which allows the court to quash a subpoena requiring "disclosure of privileged or other protected matter and no exception or waiver applies."

The subpoena requests the production of "all reports, draft reports, memoranda and other documents created as the result of an investigation of the matters referred to in the February 2007 letter addressed to [Inspector Hershman] by attorney D. Rahn Hostetter." Hostetter is the attorney who represented plaintiffs in the underlying criminal action. His letter requests that the Oregon State Police investigate the State defendants for a violation of a number of state statutes and describes a series of allegedly improper acts, including all acts alleged in the First Amended Complaint.

According to the State defendants, the investigation conducted by Inspector Hershman is "criminal in nature" and "ongoing." Affidavit of Marc Abrams, ¶ 4. When completed, "it may become the basis for personnel actions." *Id*. Plaintiffs issued this subpeona because the Oregon State Police has disclosed no information regarding the requested investigation and has apparently now prepared a draft report.

Initially, the State defendants urged the court to apply Oregon in order to determine the scope of the privilege because the subpeona only seeks material pertinent to the ORICO claim which is governed by state law. *Lewis v. U.S.*, 517 F2d 236, 237 n2 (9th Cir 1975) ("state privilege law is binding in federal civil proceedings in which state law provides the rule of decision"). Under OEC 509, Inspector Hershman may invoke a public officer privilege as to "public records determined to be exempt from disclosure under ORS 192.501 to 192.505." Oregon law exempts from disclosure "investigatory information compiled for criminal law

2 - OPINION AND ORDER

purposes" for an ongoing investigation, ORS 192.501(3), as well as certain materials relating to a personnel investigation. ORS 181.854(3); ORS 192.501(12) & .502(2).

Plaintiffs responded that the State defendants were mistaken about the applicability of Oregon privilege law because the subpoena seeks information not only to develop their ORICO claim, but also to develop their federal claims for violation of 42 USC § 1983.

Whether only Oregon privilege law applies is a moot issue since the court has recommended dismissing the ORICO claim, leaving only the § 1983 claims. As a general rule, "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa County*, 422 F3d 836, 839 (9th Cir 2005); *cf. Deocampo v. City of Vallejo*, 2007 WL 1589541 * 2 (ED Cal June 1, 2007) (applying state privilege law in mixed § 1983 and state claim cases when consistent or compatible with federal privilege law). As a result, this court is not bound by the Oregon privilege law cited by the State defendants.

Given that only the § 1983 claims remain, the State defendants now urge the court to apply the federal common law privilege for ongoing law enforcement investigations. The federal investigatory or law enforcement privilege is not based on any statute, but is "rooted in common sense as well as common law," *Black v. Sheraton Corp. of Am.*, 564 F2d 531, 542 (DC Cir 1977), and has been largely incorporated into the Freedom of Information Act ("FOIA"), 5 USC § 552(b)(7).[2] It is designed "to prevent disclosure of law enforcement techniques and

---

[2] That section of the FOIA protects from disclosure: (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) would reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security

3 - OPINION AND ORDER

procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of City of New York*, 856 F2d 481, 484 (2nd Cir 1988). It bars disclosure of facts and is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *Black*, 564 F2d at 541; *see also, U.S. v. Winner*, 641 F2d 825, 831 (10th Cir 1981).

The law enforcement privilege is not absolute, but is a qualified privilege that requires "a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F2d 1336, 1341 (DC Cir 1984); *see also, Commonwealth of Puerto Rico v. U.S.*, 490 F3d 50, 64 (1st Cir 2007), *petition for cert. filed* (Nov. 21, 2007). When the records are "both relevant and essential" to the presentation of the case on the merits, "the need for disclosure outweighs the need for secrecy," and the privilege is overcome. *In re Search of Premises Known as 1182 Nassau Averill Park Rd.*, 203 F Supp2d 139, 140 (NDNY 2002). "[I]t is appropriate to conduct the balancing test for determining whether the law enforcement privilege applies with an eye towards disclosure. As the Supreme Court has stated, '[w]hatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search the truth.'" *Tuite v. Henry*, 181 FRD 175, 177 (DDC 1998), *aff'd* 203 F3d 53 (DC Cir 1999), quoting *U. S. v. Nixon*, 418 US 683, 710 (1974).

---

intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

In addition, to assert the privilege, a responsible government official must lodge a formal claim of privilege, after actual personal consideration of the information sought. The formal claim of privilege must specify with particularity the information for which the protection is sought, and explain why the information falls within the scope of the privilege. *U.S. v. Winner*, 641 F2d at 831; *Friedman*, 788 F2d at 1341.

The State defendants appear to argue that no information needs to be disclosed if a criminal investigation is ongoing. Although recognizing the existence of the law enforcement privilege, the cases cited by the State defendants do not support a broad exemption from disclosure.

Two of the cases cited by the State defendants applied the balancing test to determine the scope of the privilege. In *In re U. S. Dep't of Homeland Sec.*, 459 F3d 565, 569 (5th Cir 2006), a surety company and bonding agent sought to stop the Department of Homeland Security ("DHS") from collecting bonds posted by aliens pending their removal. As part of an alternative dispute resolution process, DHS agreed to produce 50 bond breach determinations and respective aliens' files, but withheld many documents as within the scope of the law enforcement privilege. Although finding that the law enforcement privilege may apply, the court ordered an *in camera* review of the requested documents to determine whether any were protected by that privilege, utilizing the 10 factors identified in *Frankenhauser v. Rizzo,* 59 FRD 339, 344 (ED Pa 1973).[3]

---

[3] These factors are: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is nonfrivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

5 - OPINION AND ORDER

In *Tuite,* 181 FRD at 176-77, criminal defense attorneys sued Department of Justice ("DOJ") employees for illegally tape recording attorney-client conversations. They subpoenaed documents from the DOJ's Office of Professional Responsibility ("OPR") regarding its investigation of the matter. Utilizing the 10 *Frankenhauser* factors, the court held that the documents were protected by the law enforcement privilege because the report was inconclusive, other avenues of discovery remained open, and disclosure would impair the confidentiality on which OPR investigations depend, harm those interviewed in the report, and reveal evaluative information.

Also recognizing the existence of the law enforcement privilege, *U.S. v. Winner, supra,* held that it had not been properly invoked. That case also involved a wholly different issue, namely whether the Attorney General and Deputy Attorney General were required to appear at a post-conviction hearing to answer questions concerning documents of conversations in which the defendant had participated during the course of his informant activities.

The State defendants correctly note that in *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F3d 1122, 1125 (7th Cir 1997), the law enforcement privilege barred disclosure of information held by the government for use in ongoing criminal investigations against agricultural producers. The court concluded that the plaintiffs suing the producers in class action lawsuits should not have the right to force the government to tip its hand to criminal suspects and defendants by disclosing the fruits of the surreptitious (but presumably lawful) surveillance that the FBI had conducted.

Unlike that case, the investigation by the Oregon State Police here does not concern ongoing criminal activity by plaintiffs or other non-parties and involves no criminal suspects.

6 - OPINION AND ORDER

The charges against both plaintiffs have been dismissed or resolved. Instead, the investigation concerns the conduct of the State defendants initially pursuing those charges against plaintiffs. In that respect, it is similar to an internal affairs investigation generated in response to a citizen complaint against an officer.

Other courts have declined to apply the law enforcement privilege in the context of civil rights suits against police departments. In *Kitevski v. City of New York*, 2006 WL 680527 (SD NY March 16, 2006), the plaintiff sought to discover records from the Internal Affairs Bureau ("IAB") related to an ongoing investigation of the defendant police officer's involvement in the alleged civil rights violations. Performing the balancing analysis of public interest in nondisclosure against the plaintiff's showing of relevance and need, the court ordered production of the IAB records. Similarly in *Skibo v. City of New York*, 109 FRD 58, 64 (ED NY 1985), the court found that the self-critical analysis and executive privilege did not protect internal police evaluations and other documents regarding incidents of excessive force from disclosure in a § 1983 suit against the city for its policy of failing to adequately investigate and discipline police officers who violate civil rights. And applying California privilege law as guidance, *Deocampo*, 2007 WL 1589541 at *6, required disclosure of the IAB file concerning plaintiff's allegations of excessive force and various other claims under § 1983.

Because the law enforcement privilege is a qualified privilege, its application necessarily requires a court to weigh the government's interests in ensuring the secrecy of the documents in question against the need of the adverse party to obtain discovery. The parties have provided little information to assist the court to conduct this balancing analysis.

7 - OPINION AND ORDER

The State defendants have made no effort to show that the values underlying the law enforcement privilege are implicated by the subpoenaed information. They do not assert how disclosure of the information would affect any specific issue of confidentiality of sources or the need to protect witnesses or law enforcement personnel from harm. In addition, it appears that many of the law enforcement techniques and procedures may already have been the subject of motions to suppress in the underlying criminal case, diminishing the need for continued secrecy of those matters. However, this court can conceive that permitting unrestricted disclosure might chill the ability of the Oregon State Police to obtain candid, confidential information from persons otherwise reluctant to become involved or influenced by interests of self-preservation.

On the other hand, plaintiffs have not asserted why they believe that the records of the ongoing investigation are likely to contain relevant information and, thus, is subject to discovery under FRCP 26(b)(1) ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence"). Conceivably, the requested investigative file could contain potential admissions by the State defendants, as well as witness interviews, that provide probative information as to the existence of probable cause or illegal motivations. However, the viability of the remaining § 1983 claims initially rests on whether the District Attorney abandoned prosecution of the charges against plaintiffs. It may be appropriate to first engage in discovery on that threshold issue before pursuing the subpoenaed information.

To determine whether any of the disputed documents fall within the realm of the law enforcement privilege, the court requires additional information.

**ORDER**

8 - OPINION AND ORDER

For the reasons set forth above, on or before December 18, 2007, the State defendants shall provide additional affidavits from a responsible government official, as well as additional argument, explaining how disclosure of the subpoenaed information might impeded important government functions. If such information is not provided, then the motion to quash will be denied. If such information is provided, then on or before January 8, 2008, the plaintiffs shall provide additional argument explaining how their need for the subpoenaed information in the legitimate pursuit of its claims overcomes the claim of privilege by the State defendants. If necessary, this court will conduct an *in camera* review of the requested information. To the extent that any portion of the requested information is relevant and discoverable, it will be produced only subject to a protective order that protects the confidentiality of the information.

The pending Motion to Quash Subpoena Duces Tecum (docket # 24) will be taken under advisement on January 8, 2008.

DATED this 4th day of December, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

9 - OPINION AND ORDER