IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK HEMSTREET and GREGG CLAPPER,

                Plaintiffs,                CV-07-732-ST

      v.                     OPINION AND ORDER

BRADLEY DUNCAN, RANDALL SCORBY,
DAREN CHANDLER and JOHN DOES 1-6,

                Defendants.

STEWART, Magistrate Judge:

       Defendants Bradley Duncan ("Duncan"), Randy Scorby ("Scorby"), and Daren Chandler

("Chandler") (collectively the "State defendants") move the Court for an Order compelling

plaintiffs, Mark Hemstreet ("Hemstreet") and Gregg Clapper ("Clapper"), to respond to various

discovery requests. That motion is denied in part and granted in part as follows:

///

///

1 - OPINION AND ORDER

I.    **Hemstreet's Residency**

Duncan and Chandler cited Hemstreet with "possession of a falsely applied for hunting license" on October 1, 2000, October 1, 2001, October 1, 2002, and October 1, 2003. According to ORS 497.002,[1] a "resident" is defined as a person who has "resided in this state at least six consecutive months immediately prior to the date of making application for a license, tag or permit issued by the State Fish and Wildlife Commission." On his 2003 and 2004 applications, Hemstreet signed a statement stating, in part: "I certify that I have resided continuously within Oregon no less than 6 months immediately prior to applying for this license/tag." Abrams Aff., Exhibit E. Believing that Hemstreet misrepresented his residency, the State defendants propounded Requests for Production Nos. 1 though 9 and 12 and Requests for Admission Nos. 1 through 10, all of which relate to establishing whether Hemstreet was actually a resident of Oregon from January 1, 2000, through December 31, 2005.

Hemstreet objects to producing the requested documents, primarily on the basis that they do not seek relevant evidence. Hemstreet alleges that Duncan and Chandler violated his First Amendment rights to free speech and freedom from malicious prosecution under 42 USC § 1983 by citing him for hunting violations. One critical issue underlying those claims is whether Duncan and Chandler had probable cause for issuing the citations.

Probable cause exists where "'at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense.'" *Blankenhorn v. City of Orange*, 485 F3d 463, 471

---

[1] The citations erroneously refer to ORS 497.006.

2 - OPINION AND ORDER

(9th Cir 2007), *quoting U.S. v. Jensen*, 425 F3d 698,704 (9th Cir 2005), *cert. denied*, 547 US 1056
(2006). Oregon uses a similar standard. ORS 131.005(11) ("'Probable cause' means that there
is a substantial objective basis for believing that more likely than not an offense has been
committed and a person to be arrested has committed it").

Thus, the only facts relevant to determining probable cause are those known to Duncan
and Chandler concerning Hemstreet's residency at the time they issued the citations in January
2005. The State defendants assume that Hemstreet cannot prove a lack of probable cause
without testifying as to his residence under oath at trial. If Hemstreet intended to prove a lack of
probable cause by offering evidence that he was an Oregon resident, then discovery concerning
his actual residency would be permissible. However, Hemstreet states that, contrary to the State
defendants' assumption, he does not intend to offer any such evidence. Apparently he intends,
instead, to rely solely on the testimony of Duncan and Chandler as to the information they
possessed when issuing the citations in January 2005. Hemstreet has not disclosed how that
information falls short of establishing probable cause. In any event, as long as Hemstreet does
not contest the accuracy of the information relied on by Duncan and Chandler, then the requested
discovery is not relevant to establishing probable cause.

However, the State defendants seek information concerning Hemstreet's residency for
two other purposes. One purpose is to determine if probable cause would have existed at the
time of trial. The State defendants argue that this purpose is relevant to the malicious
prosecution charge. However, once again, the issue is what the State defendants knew at the
time they decided to prosecute Hemstreet, not what the actual facts may be. The other stated
purpose is to attack Hemstreet's credibility. If Hemstreet certified that he was a resident when,

in fact, he was not a resident, then the requested information is indeed relevant to impeaching his credibility.  Since Hemstreet is likely to be a witness at trial, discovery as to issues relating to his credibility is permissible.

Although the requested discovery is relevant to Hemstreet's credibility, Hemstreet also objects to the State defendants' discovery requests concerning his residency as overly broad, intrusive and overreaching and not sufficiently limited in time or duration.  This court agrees.  Acknowledging that Hemstreet would not like to have the details of his finances and business arrangements divulged, the State defendants have offered to narrow their requests to have Hemstreet:  (1) admit that the Shilo headquarters is not a residence and is not zoned for and does not contain a residence; (2) admit that for the relevant time frame subsequent to September 8, 2003, he has had no residence in Oregon other than the Shilo Ranch; and (3) provide the number of days in each of the pertinent years (2000-05) for which he actually stayed overnight in Oregon.  This is a reasonable approach to resolving Hemstreet's objections.

Therefore, the State defendants' motion to compel is granted as to the narrowed requests set forth in their offer to Hemstreet and otherwise is denied.

## II.  **Clapper**

Requests for Admission 15 and 16 seek information relating to a charge in Multnomah County against Clapper for possession of unlawful substances.  The State defendants seek this information only if Clapper intends to include the legal costs arising out of those charges as damages in this case.  If not, they have agreed to withdraw these requests.  Clapper has now clarified that he does not seek those costs as damages.  Therefore, these requests are deemed withdrawn.

4 - OPINION AND ORDER

III.    **Interrogatories**

The State defendants complain that plaintiffs' responses to Interrogatories Nos. 3 through 6 are inadequate.  This court agrees.

Interrogatory No. 3 asks for the bases of each act that plaintiffs allege defendants committed that violated their First Amendment rights.  In response, plaintiffs recited only the general allegations in the First Amended Complaint.  Because those allegations do not explain how that conduct violated plaintiff's First Amendment rights, plaintiffs' response is inadequate.

Interrogatory No. 4 contains a typographical error of which the State defendants notified plaintiffs on October 10, 2007.  Abrams Aff., ¶ 4 & Exhibit D, p. 4.  As of the date the State defendants filed their motion, plaintiffs had failed to supplement their answer.

Interrogatory No. 5 asks plaintiffs to state what evidence they have that defendants violated plaintiffs' First Amendment rights by issuing hunting citations (Requests for Admission Nos. 21-23).  Plaintiffs responded only with a list of themselves and four other people who could provide that information.  That is not evidence as to why plaintiffs believe that their political beliefs were an issue in defendants' actions.

Interrogatory No. 6 asks plaintiffs to identify the John Does 1-6 whom they believe violated their First Amendment rights.  Plaintiffs responded that they have not yet identified anyone else except one person who is now deceased.  Given that it has been three years since plaintiffs were cited for hunting violations, they should have identified those persons by this time.

Plaintiffs state that although they perceive these to be improper contention interrogatories, they will provide more detailed responses.  However, that concession only came

in response to the State defendants' motion.  Therefore, the State defendants' motion to compel

is granted as to these interrogatories.

**IV.**    **Attorney Fees**

The State defendants seeks to recover their attorney fees incurred in connection with this

motion.  Recovery of attorney fees is governed by FRCP 37(a)(4)(A) which provides as follows:

> If the motion is granted or if the disclosure or requested discovery is
> provided after the motion was filed, the court shall, after affording an
> opportunity to be heard, require the party or deponent whose conduct
> necessitated the motion or the party or attorney advising such conduct or
> both of them to pay to the moving party the reasonable expenses incurred
> in making the motion, including attorney's fees, unless the court finds that
> the motion was filed without the movant's first making a good faith effort
> to obtain the disclosure or discovery without court action, or that the
> opposing party's nondisclosure, response, or objection was substantially
> justified, or that other circumstances make an award of expenses unjust.

The State defendants made a good faith effort to attempt to resolve these discovery

disputes prior to filing their motion.  Abrams Aff., ¶¶ 5,7 & Exhibit "D."  Thus, they are entitled

to recover their attorney fees unless plaintiffs' objection "was substantially justified" or "other

circumstances make an award of expenses unjust."  This court finds that neither exception

applies.

Plaintiffs properly objected to discovery concerning Hemstreet's residency as not

relevant to the issue of probable cause and also on the basis of being overly broad, intrusive and

overreaching.  However, as discussed above, the residency information sought is relevant to

Hemstreet's credibility and the State defendants offered to narrow their requests.  In addition,

plaintiffs did not clarify their position concerning Clapper's economic damages or agree to

supplement their interrogatory responses until after the State defendants filed this motion.

6 - OPINION AND ORDER

Therefore, under FRCP 37(a)(4)(A), the State defendants are entitled to recover their reasonable expenses incurred in bringing this motion, including attorney fees.

DATED this 5th day of December, 2007.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

7 - OPINION AND ORDER